UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ROBERT SHERMAN BERRY,
                     Movant

   -vs-

UNITED STATES OF AMERICA,
                  Respondent.

NOS.  CR-96-0259-WFN-1
       CV-11-0429-WFN-1

ORDER DENYING MOVANT'S
MOTION UNDER 28 U.S.C. § 2255

Before the Court is Mr. Berry's Motion under 28 U.S.C. § 2255 (ECF No. 412), to which the Government has responded (ECF No. 419) and Mr. Berry has replied (ECF No. 424). The Court has reviewed the file, the trial transcript, the Court's trial notes, and the briefing on the Motion, as well as recalled its own memory of the trial. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (reviewing judge may consider his own notes and memory of trial). For the reasons stated below, the Motion is denied.

## BACKGROUND

Mr. Berry was indicted on December 5, 1996, on 12 counts with two co-Defendants (ECF No. 19). A jury trial commenced on March 3, 1997. On April 2, 1997, the jury returned guilty verdicts on Count 1--conspiracy in violation of 18 U.S.C. § 371; Counts 10 and 11--interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312; and Count 12--possession of unregistered grenades in violation of 26 U.S.C. § 5861(d). The jury reached no decision on Counts 2 through 9. A Superseding Indictment was filed April 9, 1997, on Counts 2 through 9 (ECF No. 132).

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 1

A second jury trial commenced on June 19, 1997. On July 23, 1997, the jury returned guilty verdicts on Counts 2 and 6--destruction of a building used in interstate commerce in violation of 18 U.S.C. § 844(i); Counts 3, 5, 7, and 9--use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and Counts 4 and 8--armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Mr. Berry was sentenced on November 4, 1997, to two life terms plus seventy-one years and ten months incarceration (ECF No. 271). The matter was appealed (ECF No. 273) and a Mandate filed June 21, 1999, affirming the decision of the district court (ECF No. 342).

In 2007, Mr. Berry filed a Motion that he labeled as a Motion to Vacate his convictions under 28 U.S.C. § 2255. This Court denied Mr. Berry's Motion after reaching the merits of his claims. Mr. Berry appealed and the Ninth Circuit affirmed. However, the Ninth Circuit found that the Motion was substantially a motion for a new trial under Federal Rule of Criminal Procedure 33.

In September of 2011, Mr. Berry petitioned the Ninth Circuit to authorize the filing of a second § 2255 motion to address the two additional claims. The Ninth Circuit ruled that as Mr. Berry's first Motion under 28 U.S.C. § 2255 was substantially a motion for a new trial, Mr. Berry's request for authorization to file a second § 2255 was unnecessary. Accordingly, the Circuit transferred the motion to this Court, with instruction to treat it as a first motion under § 2255.

In Mr. Berry's new Motion, he contends there are two grounds for relief:

Ground One (Loren Berry Brady/Giglio/Napue): The government (a) breached its pre-trial duty under Brady by suppressing the fact that it had promised to provide key witness Loren Berry benefits after the trial, (b) violated Giglio when it solicited testimony that it knew was false, and (c) violated Napue when it breached its obligation to correct the false testimony.

* * *

Ground Two (CABL Brady): In regards to FBI CABL science, the government breached its obligation of full disclosure under Brady/Giglio.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 2

ECF No. 412 at 70-71.[1]

## APPLICABLE LAW

To gain relief under 28 U.S.C. § 2255, a petitioner must establish that (1) he is in custody under a sentence of this federal court; (2) his request for relief is timely; and (3) the court lacked either personal or subject matter jurisdiction, the conviction or sentence is unconstitutional, the conviction or sentence violates federal law, or the sentence or judgment is otherwise open to collateral attack.  28 U.S.C. § 2255.

Pursuant to the Anti-Terrorism and Effective Death Penalty Act [AEDPA], a "1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of–"

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] In its last Order, the Court referenced Berry's claims listed in ECF No. 367, where Mr. Berry filed an Amendment to his Motion for a New Trial after he appealed this Court's decision and this Court no longer had jurisdiction.  In directing the Government to respond to Mr. Berry's new claims, this Court referenced that filing while additionally citing to his new Memorandum in support of his recently filed § 2255 Motion (ECF No. 413).  Subsequently, Mr. Berry filed a Motion to Correct, where he acknowledges that ECF No. 367 identifies "the same core claims" as his current Motion, but he makes it clear that he is proceeding on his new Motion (ECF No. 418).  The Government understood Mr. Berry's position and addressed his new Motion in its response (ECF No. 416).  Therefore, Mr. Berry's Motion to Correct is moot.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 3

1
2          (4) the date on which the facts supporting the claim or claims presented could
           have been discovered through the exercise of due diligence.

3    28 U.S.C. § 2255(f).

4                                      **DISCUSSION**

5    <u>**Jurisdiction:**</u>

6          The Court must first address the issue of jurisdiction.  In its response to Mr. Berry's

7    new Motion, the Government begins by arguing that Mr. Berry's first Motion was not a

8    Motion for a New Trial, but rather an actual § 2255 Motion, as it was named.  Accordingly,

9    the Government contends that this Court lacks jurisdiction because the Ninth Circuit did not

10   provide the required finding of "newly discovered evidence that, if proven and viewed in

11   light of the evidence as a whole, would be sufficient to establish by clear and convincing

12   evidence that no reasonable factfinder would have found the movant guilty of the offense."

13   28 U.S.C. § 2255(h)(1).  However, because the Ninth Circuit has concluded that Mr. Berry's

14   first Motion was a Motion for a New Trial and his new § 2255 Motion is to be construed as

15   his first, 28 U.S.C. § 2255(h) is inapplicable.  Accordingly, this Court has jurisdiction.

16         The Court will address Mr. Berry's two claims in turn.

17   **I.    The Loren Berry Claim**

18         Mr. Berry defines his first claim as follows:

19         **Ground One** (Loren Berry Brady/Giglio/Napue): The government (a) breached
           its pre-trial duty under Brady by suppressing the fact that it had promised to
20         provide key witness Loren Berry benefits after the trial, (b) violated Giglio
           when it solicited testimony that it knew was false, and (c) violated Napue when
21         it breached its obligation to correct the false testimony.

22   <u>**Timeliness:**</u>

23         The Court begins by noting that under § 2255(f)(1), Mr. Berry's time to file a § 2255

24   motion has long since expired.  A judgment of conviction becomes final when the conviction

25   is affirmed on direct review, or when the time for perfecting an appeal expires.  *Clay v.*

26   *United States*, 537 U.S. 522, 527 (2003).  On June 21, 1999, the Ninth Circuit issued its

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 4

mandate in Mr. Berry's direct appeal. From that date, Mr. Berry had 1 year and 90 days to file his motion. On September 18, 2000, Mr. Berry's time expired under § 2255(f)(1). Because Berry's Motion For a New Trial was not part of his direct appeal, the clock did not reset when the Court considered his Motion For a New Trial (*See United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2008).

Mr. Berry argues that his first claim is timely under § 2255(f)(2) and (4). Mr. Berry contends that he found out in late September of 2007 that his brother, Loren Berry, received payment from the FBI (ECF No. 412 at 55-57). Accordingly, he raised the issue in his reply of his Motion for a New Trial, filed October 22, 2007 (ECF No. 347). Mr. Berry asserts that this notice to the Government and the Court is sufficient to preserve his claim.

The Government responds that the claim is untimely. Specifically, that as Mr. Berry admits, by October of 2007, he knew Loren Berry received money from the FBI, but Berry did not properly seek appellate court permission to file a second petition until September of 2011, well outside of one year.

Both parties are in agreement that for this claim, the clock under § 2255(f)(2) or (4), started by October 1, 2007. Accordingly, Berry had one year from that date to file a timely motion. Berry did not file his current Motion until September of 2011. However, as stated *supra*, Berry did state the claim in his 2007 reply and filed a proposed amendment to his Motion for a New Trial after this Court lost jurisdiction (ECF No. 367). Additionally, Mr. Berry attempted to raise the issue on his appeal of the denial of his Motion for a New Trial.[2]

---

[2]The Ninth Circuit addressed this attempt in their decision:

In addition to the above argument, Berry claims on appeal that the government committed a *Brady* violation when it failed to disclose that Berry's brother, Loren Berry, was compensated for the testimony he gave at Berry's trial. Berry raised this claim for the first time in his reply brief before the district court; he did not identify the claim in either his motion or in his initial supporting

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 5

In support of a timely filing, Berry first argues that his *pro se* 2007 reply should have been liberally construed by this Court as a Motion to Amend his Motion for a New Trial. For his position, Berry relies on *Woods v. Cary,* 525 F.3d 886, 889 (9th Cir. 2008). However, *Woods* is factually distinct from this case. In *Woods,* a petitioner filed an initial habeas petition in 2003. Then, in 2004, he filed a new petition before the first petition had been adjudicated. The district court dismissed the second petition as successive under 28 U.S.C. § 2244(b)(3)(A). In Berry's case, the Court merely declined to consider the new issue raised for the first time in a reply brief. *See Cedano-Vera v. Ashcroft,* 324 F.3d 1062, 1066 (9th Cir. 2003).

Berry next argues that his current claim is timely because it relates back to the notice in his reply. He contends that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that the statute of limitations was intended to provide. Berry relies on *Mandacina v. United States,* 328 F.3d 995, 1000 (9th Cir. 2003), *Mayle v. Felix,* 545 U.S. 644 (2005) and *Anthony v. Cambra,* 236 F.3d 568, 576 (9th Cir. 2000). However, *Mayle* cuts against his position. In that case, the Supreme Court held that,

> [a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Id.* at 650. Because Berry never amended his original Motion, or filed a § 2255 Motion until 2011, his current claim asserts a new ground for relief that does not relate back to his original pleading.

---

memorandum. Because the *Brady* claim was not included in his § 2255 motion, it was not addressed by the district court and falls outside the scope of our certificate of appealability.

*United States v. Berry,* 624 F.3d 1031, 1040 (9th Cir. 2010).

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 6

1    **Equitable Tolling**

2        Mr. Berry also argues that equitable tolling is appropriate in his case.  "[A] petitioner

3    is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights

4    diligently, and (2) that some extraordinary circumstance stood in his way and prevented

5    timely filing. *Holland v. Florida,* 130 S. Ct 2549, 2562 (9th Cir. 2010) (internal quotations

6    omitted).    In *Holland*, where the Supreme Court first found equitable tolling under

7    AEDPA, the Court began to outline the parameters of an "extraordinary circumstance,"

8    concluding that although garden variety attorney negligence "is not an extraordinary

9    circumstance," "professional misconduct . . . could . . . amount to egregious behavior

10   and create an extraordinary circumstance that warrants equitable tolling." *Id*. at 2563.

11   Specifically, an attorney's failure to file a federal habeas petition despite his client's request

12   to do so, and failure to respond to his client's letters and phone calls seeking information

13   could "create an extraordinary circumstance that warrants equitable tolling." *Id.*

14       The Ninth Circuit has concluded that an extraordinary circumstance is some external

15   impediment that causes a movant's untimeliness. *Bryant v. Arizona Atty. Gen.,* 499 F.3d

16   1056, 1061 (9th Cir. 2007).  Examples of external impediments that prevent timely filing

17   include wrongful government conduct, inadequate prison libraries, a prisoner's lack of access

18   to his files, and an attorney's egregious misconduct. *Shannon v. Newland*, 410 F.3d 1083,

19   1090 (9th Cir. 2005).  The circumstance must be beyond the prisoner's control. *Spitsyn v.*

20   *Moore,* 345 F.3d 796, 799 (9th Cir. 2003).  In addition, the prisoner must show a causal

21   connection between the extraordinary circumstance and his failure to timely file his motion.

22   *Id.*  The Ninth Circuit has concluded that a habeas petitioner "should receive an evidentiary

23   hearing when he makes a good-faith allegation that would, if true, entitle him to equitable

24   tolling." *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir.2006).  The Circuit has also held that

25   "a total lack of access to any legal materials regarding AEDPA . . . can justify equitable

26   tolling." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000).

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 7

Where a petitioner alleges that he (1) made repeated efforts to contact his attorney to resolve issues related to his § 2255 motion, (2) filed a letter with the district court expressing concern with his sentence and (3) filed his § 2255 motion within eighteen days of receiving necessary information from his attorney, (4) was without access to legal resources for six months and (5) alleges egregious attorney misconduct, the Ninth Circuit has concluded that an evidentiary hearing on the issue of equitable tolling is warranted. *United States v. Carlsen,* 441 F. App'x 531, 535 (9th Cir. 2011). Similarly, when a petitioner proceeding *pro se* (1) attached a sworn declaration and roughly 70 pages of documentation, including medical records, in support of his petition, including a psychologist's report stating petitioner's IQ is 56, (2) had a mental status examination concluding he is barely oriented, unsure of the year or the date or the day of the week, and (3) where he cannot make simple change, and his judgment is impaired and he has "command hallucinations telling him to do things," then the Ninth Circuit found that petitioner's filings constitute a good-faith showing of mental incompetence requiring an evidentiary hearing. *Dent v. Knowles,* 448 F. App'x 705, 706 (9th Cir. 2011).

In contrast, where a petitioner was aware of the limitation period, but was unable to correctly calculate the time period, because he had no access to case law or other materials defining the term "final judgment" under AEDPA, the Ninth Circuit concluded that equitable tolling is not appropriate. *Alexander v. Schriro,* 312 F. App'x 972, 974 (9th Cir. 2009).

Berry begins by contending that though he was represented by counsel during part of the time from 2007 to 2011, counsel was only appointed to represent Berry on his appeal. Accordingly, Berry emphasizes that he would have had to proceed *pro se* on any motion under § 2255(h), and that *pro se* parties are entitled to greater leeway in a determination of diligence.   Mr. Berry then generally contends that he pursued his rights diligently and external forces were accountable for his failure to file a timely claim.  Specifically, Mr. Berry argues, without support, that he could not have petitioned the Ninth Circuit for permission

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 8

1   to file a successive § 2255 motion under § 2255(h), until his first Motion was found to be

2   properly treated as a Motion for a New Trial.

3           The Government responds that equitable tolling is inappropriate because Mr. Berry did

4   not pursue his rights diligently, nor did some extraordinary circumstance stand in his way.

5   Berry waited almost four years, two years of which he had appointed counsel, before filing

6   his § 2255 Motion.  Furthermore, the Government argues that Berry fails to even allege

7   extraordinary circumstances.  The Court agrees.

8           Even considering that Mr. Berry proceeded *pro se*, the Court concludes that equitable

9   tolling is inapplicable in this case.  The Court further concludes that a hearing is unnecessary

10  because Mr. Berry has not alleged facts, that if true, entitle him to equitable tolling.  *Roy v.*

11  *Lampert,* 465 F.3d 964, 969 (9th Cir. 2006).  The equitable tolling bar is a high one, and the

12  alleged facts do not meet the bar.  Though Mr. Berry claims that he could not have petitioned

13  the Ninth Circuit for permission to file a successive § 2255 motion under § 2255(h), until his

14  first Motion was found to be properly treated as a Motion for a New Trial, this is plainly

15  incorrect.  Before the Ninth Circuit concluded that Mr. Berry's first § 2255 Motion should

16  be construed as a Motion for a New Trial, Mr. Berry could have petitioned the Circuit for

17  permission to file a second § 2255.  After the Ninth Circuit made their determination, Berry

18  did not need permission to file his new § 2255, because he was deemed to have never filed

19  one.

20          The Court notes that Mr. Berry clearly had the ability to petition the circuit

21  under § 2255(h), because he properly did so in 2011.  Further, if Mr. Berry hoped that

22  the Ninth Circuit would address the issue in his appeal from his Motion For a New Trial

23  denial, it was clear by April 8, 2008, when the Circuit granted his certificate of appealability,

24  but not on the issue of his brother, that this avenue was closed to him.  Still, after this date,

25  years went by before Berry filed his current Motion.  In short, Berry has not alleged  facts

26  claiming that he has been pursuing his rights diligently, or that some extraordinary

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 9

circumstance stood in his way and prevented timely filing.  Accordingly, Mr. Berry's fist claim fails.

**II.     The CABL *Brady* Claim**

Mr. Berry defines his second claim as follows:

> **Ground Two** (CABL *Brady*): In regards to FBI CABL science, the government breached its obligation of full disclosure under Brady/Giglio.

In determining whether there has been a *Brady* violation, a court considers whether the evidence was: (1) favorable to the accused, (2) suppressed by the government and (3) material to the guilt or innocence of the defendant.  *United States v. Lopez,* 577 F.3d 1053, 1059 (9th Cir. 2009).

> Evidence is favorable if it is exculpatory or impeaches a prosecution witness, and suppression occurs when favorable evidence known to police or the prosecution is not disclosed, either willfully or inadvertently.  Evidence is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' of a different result exists when the government's evidentiary suppression undermines confidence in the outcome of the trial.  If the petitioner establishes all three elements, the challenged conviction or sentence must be set aside.

*Id.*

In his second claim, Mr. Berry contends that the Government committed a *Brady* violation by failing to turn over FBI documentation that allegedly invalidated the scientific foundations of compositional analysis of bullet lead [CABL] science.  Mr. Berry contends that he first became aware of this violation in January of 2008, shortly after he filed notice of appeal of the denial of his Motion For a New Trial.  He states that he promptly filed an Amendment to his Motion for a New Trial (ECF No. 367), to include the claim.[3]  As he did  with his first claim involving his brother, Mr. Berry argues

---

[3]As discussed *supra*, this Court no longer had jurisdiction.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 10

1   that this claim is timely because (1) his 2008 filing gave sufficient notice to the Government
2   and (2) his current claim relates back to the original CABL due process claim.

3        In its response, the Government argues that this claim has been briefed, litigated and
4   dismissed on the merits. In his reply, Mr. Berry argues that technically the Ninth Circuit did
5   not consider the CABL claim in Mr. Berry's Motion For a New Trial under the *Brady*
6   factors.[4]

7        The Court begins by concluding that if Mr. Berry's second claim is indistinguishable
8   from his original CABL claim, then the issue has been litigated and dismissed. Conversely,
9   if Mr. Berry's second claim is distinguishable from his original CABL claim, then it is
10  untimely under 28 U.S.C § 2255(f). Berry states that he became aware of the CABL
11  *Brady* violation in January of 2008. Accordingly, Berry had one year from that date to file
12  a timely motion. Berry did not file his current Motion until September of 2011. Berry's
13  argument that his Motion to Amend provided sufficient notice to the Government and
14  "relates back" to his original CABL claim is incorrect. *Mayle v. Felix,* 545 U.S. 644, 650
15  (2005). Similarly, Mr. Berry has not alleged facts that, if true, would entitle him to equitable
16  tolling. *Roy v. Lampert,* 465 F.3d 964, 969 (9th Cir. 2006).

17       Assuming *arguendo,* that Mr. Berry's current CABL claim is distinguishable from
18  his original claim and that this Court could somehow reach the merits of this claim, he would
19  not be entitled to relief. Though Mr. Berry is correct that this Court and the Ninth Circuit did
20  not consider his original CABL claim under a *Brady* analysis, the Courts' previous analysis
21  would be dispositive on the issue.

22       This Court considered Berry's original claim under *United States v. Jackson,* 209 F.3d
23  1103, 1106 (9th Cir. 2000), concluding that Mr. Berry's claim failed to meet the fifth element

24

25       [4]Though Mr. Berry is correct, a *Brady* violation is a violation of the Due Process
26  clause, the same clause considered previously. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 11

of the new trial test:  (5) the new evidence is such that a new trial would probably produce an acquittal.

The Court reviewed the trial transcript, its notes of the trial and recalled the testimony and exhibits received.  The Court concludes that Movant has failed to satisfy this fifth  requirement for a new trial, that the new evidence would probably produce an acquittal.  The testimony of Ms. Lundy based on the CABL analysis was only a small piece of evidence related to Movant's involvement in the charged conduct and certainly not the "crux" of the evidence. If the testimony had never been offered, the jury would still have had more than enough evidence upon which to convict the Movant on all counts. Not only was there a significant amount of evidence presented by the Government in this five week trial, but the Movant's alibi defenses were also weak.

Movant's involvement in the charged conduct was supported by the testimony of many witnesses and exhibits, with the following evidence appearing particularly probative on the issue of Movant's guilt.  First, Movant was arrested with his two co-defendants on October 8, 1996, as he returned from a round trip from Sandpoint, Idaho to a U.S. Bank in Portland, Oregon. The three vehicles driven by the three co-defendants  had survival gear, an M-16 gun, flack jackets, and grenades.  The three men had disguises similar to those used in the prior two charged bank robberies that included goggles and latex gloves.  Movant's co-defendant, Mr. Barbee , admitted that one of the vehicles, the van, had been stolen.  Stolen vans had also been used in the charged bank robberies.  Defendants testified that the trip to the Portland bank was merely to leave letters and was a publicity stunt.  Movant testified that he was going to run into the bank and leave a letter while Mr. Barbee held the door and released a gas grenade, with Mr. Merrill doing the diversion.   The explanation was not credible given the distance they traveled and the significant preparation that they engaged in prior to the trip.

Second, three types of weapons (Benelli shotgun, Ruger Vaquero revolver and Winchester pump shotgun) identified in the photographs of the bank robberies were also possessed by Movant according to the testimony of four witnesses: Chris Davidson (confidential witness), Loren Berry (Movant's brother), Donald Blaese (Movant's landlord) and Brad Day (friend of Movant's son).  Movant testified that he sold the Vaquero revolver in February or March of 1996, but Loren Berry stated he had seen Movant paint the gun black a few days before the July 12, 1996 robbery and then dip it in acid later to remove the paint.  Mr. Davidson testified that the Movant gave him the Winchester to sell after the July 12, 1996 robbery.  Movant retrieved the gun and admitted at trial telling his son to get rid of the Winchester while he was in jail. Just because the Benelli shotgun and Rugar Vaquero revolver were not found during the subsequent execution of the search warrants does not erase the fact that Movant possessed weapons similar to those weapons identified in the bank robberies.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 12

Third, parts of letters found on co-defendant's Merrill's computer were similar to letters left at the crime scenes. Also the letter carried by the defendants on October 8, 1996, was similar in content and was on Merrill's computer and could have been printed on Merrill's printer. A common thread throughout the trial testimony was the three co-defendants' distain for "usery" which was punishable by death , opposition to abortion which was also a capital crime, their use of the name "Yahweh" for god whose laws were superior to the laws of the United States and reference to the Phinehas priesthood. Many similar references appeared in the letters left at the crime scenes and mailed to the victims after the crimes. All three co-defendants testified about their sense that the government was out of control after the events at Ruby Ridge and Waco and that they were waging a war against evil which justified stealing vehicles from corporations. All three were identified as being pictured in the "Ragged Edge" article published by the Spokesman Review. Movant admitted he had stopped paying taxes, had obtained false identification and identified "safe houses."

Fourth, the testimony of  Mr. Davidson and  Loren Berry implicated Movant. Movant made many statements to Mr. Davidson that revealed his interest in and knowledge of the charged conduct. Loren Berry also heard Movant say the bombers were good guys and were on the right side. After the July 12 bank robbery Movant told Davidson that he had burned the ponchos that Davidson had sold them. At trial, counsel for the co-defendants attempted to impeach both of these witnesses. Loren Berry had an admitted problem with alcohol and telling the truth. Mr. Davidson dealt in military surplus which raised some questions  and was interested in the reward. Still, some details of their testimony was corroborated by other witness and even by the Defendants themselves, which enhanced the credibility of both witnesses.

Fifth, the height and weight of the teller robber during both bank robberies matched the Movant's height and weight, and the height and weight of the lobby robber during both robberies matched Mr. Barbee's height and weight. The physical descriptions were also consistent with the two individuals who placed the bomb at Planned Parenthood.  Bank employees testified that the two robberies were very similar and the teller who was robbed twice was 99.99% sure that the teller robber was the same person with a similar black revolver used during both robberies.  Co-defendant Merrill was identified by several witnesses as the driver of the van when both the Spokesman Review and Planned Parenthood were bombed. He also met the description of the get away driver after the first bank robbery.

Sixth, the April 1, 1996 bank robbery resulted in a loss of $72,000. All of the defendants took trips in that time frame, Mr. Merrill to Colorado on a road trip, Mr. Barbee and family to Florida by airline, and Movant and family to Michigan also on a road trip. Movant gave his brother Loren $800 in cash in $20 bills during that Michigan trip. Movant also moved his family out of his

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 13

shop and into a $750 per month rental home when he returned from Michigan, paying his rent in cash. While there was no evidence of flagrant spending, it did appear that cash seemed in better supply than expected given the fact that in 1996 the Defendant admitted he had lost interest in the repair shop business and did just enough to get by. Loren Berry confirmed that fact and several witnesses testified that neither the shop nor the surplus/salvage business appeared to be going concerns.

Movant's alibi defenses were also weak. The first bombing at the Spokesman Review followed by the bank robbery occurred at about 2:30 to 3:00 p.m. on April 1, 1996. Movant testified that he left to drive to Michigan with his family on March 31, 1996. However, his brother, Vernal Berry, testified that he called Movant on March 31, 1996 and Movant said he would leave for Michigan the next day. Vernal Berry further testified that he called on April 2 and Movant was not in Michigan yet. Another of Movant's brothers (Clinton Berry) testified that Movant was in Michigan visiting family on April 3, 1996. On April 11, Movant visited his brother Loren and his family also in Michigan. The jury could easily conclude that Movant left town immediately after the charged events and drove with his family to Michigan.

The second bombing at Planned Parenthood followed by another bank robbery at the same U.S. Bank occurred at about 2:00 p.m. on July 12, 1996. A court clerk (Sherylee Foster) testified that Movant had been in court with his son in Sandpoint, Idaho, on July 12 at about 9:30 am with the hearing concluding at 9:45 to 10:00 am. Movant testified that after the court appearance he went to lunch and then went home. The driving time from the Sandpoint area to Planned Parenthood in the Spokane Valley was about 1 hour and 20 minutes. Movant admitted he had no physical evidence, to substantiate either of his alibis. Again, the jury could easily find this alibi to not be credible.

The Co-defendants also presented testimony from one person, Pat Thoren, who stated the stolen van used in the first bank robbery was observed on March 29, 1996, in Moses Lake with three people in it that did not match the physical description of the Defendants. Another witness, Andy Burson, at the drive up window of the bank on July 12, 1996, saw the driver of the van for 5-10 seconds and thought he had a dark brown beard. Still, the evidence weighed heavily toward a finding of Movant's guilt on the charged conduct.

Order filed November 27, 2007 (ECF No. 349).

When the Ninth Circuit considered the merits of Berry's CABL claim, they explicitly addressed the issue of due process, similarly concluding that Mr. Berry was not entitled to relief:

In any event, even if CABL evidence were generally unreliable, we would still be inclined to reject Berry's due process challenge based upon the reliability

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 14

of the specific testimony in his case. Lundy's testimony was not susceptible to any of the criticisms identified in the National Research Council report. In particular, Lundy did not testify that the CABL tests definitively linked Berry to the Planned Parenthood pipe bomb. In fact, she repeatedly stated that she could not determine whether the buckshot from the bomb came from the bags found in Berry's shop. Instead, she testified only that the buckshot from the two sources had identical chemical profiles.

Lundy's analysis was also highly individualized to the unique factual circumstances of Berry's case. She investigated the precise manner in which Hornaday lead was manufactured and adjusted her conclusions based upon that firm's manufacturing processes. Cf. Nat'l Res. Council, supra, at 112 (cautioning against use of generalization in bullet manufacturing process). Further, the fact that the pipe bomb contained buckshot allowed Lundy to test multiple samples and to compare their chemical consistency; Lundy testified that she tested 26 pellets from the pipe bomb and 15 from Berry's autoshop. Finally, Lundy's determination that the pipe bomb buckshot was 3 percent antimony-a feature unique to Hornaday buckshot-linked Berry to the pipe bomb regardless of the CABL tests.

The reliability of Lundy's testimony was also buttressed by Hanson, who confirmed Lundy's major conclusions. Hanson, for example, testified that Hornaday was to his knowledge the only manufacturer that used lead with 3 percent antimony. And it was Hanson's testimony that Hornaday shipped only thirty-two bags of buckshot to the Spokane area that provided the strongest connection between Berry and the Planned Parenthood pipe bomb.

Thus, the CABL evidence used against Berry does not appear to suffer from the flaws to which the science may otherwise be susceptible. Simply put, given the circumstances of this case, Lundy's conclusions were not overstated and appear to be quite reliable.

Based on the above, the criticisms of Lundy's CABL analysis concern the proper weight of the evidence, not its admissibility. It can hardly be said, therefore, that the adversary system was not "competent to uncover, recognize, and take due account of its shortcomings." *Barefoot*, 463 U.S. at 899, 103 S. Ct. 3383. Accordingly, we reject Berry's due process claim.

*United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir. 2010). Under a *Brady* analysis, Mr. Berry would be unable to meet the third element. He could not show that the alleged *Brady* violation was material to his guilt or innocence. Given the above findings in this case, there is no reasonable probability that the result of the proceeding would have been different nor does any allegation undermine confidence in the outcome of the trial. *United States v. Lopez,* 577 F.3d 1053, 1059 (9th Cir. 2009). For the reasons stated above, Mr. Berry's § 2255 Motion is denied.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 15

III.    **Motion to Stay**

On January 30, 2012, the Government filed its response to Mr. Berry's § 2255 Motion.  Subsequently, on February 3, 2012, Mr. Berry filed a Motion entitled Motion to Stay Section 2255 Motion Proceedings to Allow Time to Brief Newly Uncovered Claims (ECF No. 420).   In the Motion, Mr. Berry requests a sixty day stay while he completes briefing on new information on his Loren Berry claim "currently stated in Movant Berry's § 2255 Motion" (ECF No. 420 at 1).  More than sixty days have passed since Mr. Berry filed his Motion, so the Motion is now moot.  Nevertheless, the Court notes that Mr. Berry's Motion and accompanying declaration cut against his earlier argument of diligently pursuing his rights.  Rather, it appears to show that Mr. Berry only began to pursue his Loren Berry theory again at the end of 2011 and the beginning of 2012.

# CERTIFICATE OF APPEALABILITY

An appeal of this Order may not be taken unless this Court or a Circuit Judge issues a certificate of appealability, finding that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a showing that "reasonable jurists  would find  the  district Court's  assessment  of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the Court's preceding analysis, the Court concludes jurists of reason would not find the Court's rulings debatable. Thus, a certificate of appealability should not issue. Accordingly,

**IT IS ORDERED** that:

1.  Mr. Berry's Motion under 28 U.S.C. § 2255, filed November 14, 2011, **ECF No. 412**, is **DENIED**.

2.  Mr. Berry's Motion to Correct Clerical Error, filed January 23, 2012, **ECF No. 418**, is **DENIED AS MOOT**.

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 16

1    3. Mr. Berry's Motion to Stay Section 2255 Motion Proceedings to Allow Time to
2  Brief Newly Uncovered Claims, filed February 3, 2012, **ECF No. 420**, is **DENIED AS**
3  **MOOT**.

4    4. Mr. Berry's Motion for Leave to File Reply to United States' Opposition to Motion
5  to Stay Proceedings, filed February 27, 2012, **ECF No. 422**, is **GRANTED.**

6    5. Mr. Berry's Request for Leave to File Overlength Brief, filed March 5, 2012, **ECF**
7  **No. 423**,  is **GRANTED**.

8    The District Court Executive is directed to:

9   • File this Order and provide copies to Mr. Berry and to the United States Attorney
10    in Spokane, Washington;

11   • Inform the Ninth Circuit Court of Appeals that if the Petitioner files a Notice of
12    Appeal that a certificate of appealability is **DENIED**; and

13   • **CLOSE** the corresponding civil file, CV-11-0429-WFN.

14    **DATED** this 26th day of April, 2012.

15

16                                          s/ Wm. Fremming Nielsen
17                                    ───────────────────────────────
                                        WM. FREMMING NIELSEN
   03-06-12                            SENIOR UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

ORDER DENYING MOVANT'S MOTION
UNDER 28 U.S.C. § 2255 - 17