JOHN P. NOLLETTE
Attorney at Law
1408 W. BROADWAY AVE.
SPOKANE, WA  99201
Ph: (509) 701-0566

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 2:96-00259-WFN-1 |
| Plaintiff, | ) | |
| | ) | ROBERT BERRY'S |
| | ) | SENTENCING MEMORANDUM |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT S. BERRY, | ) | |
| | ) | |
| Defendant. | ) | |

The Defendant, Robert Berry, through counsel, respectfully submits the following sentencing memorandum:

## PART I

1.    Mr. Berry respectfully submits for the Court's consideration, a renewal of his remaining Objections to the Presentence Investigation Report (PSIR) as revised June 12, 2020, ECF 493, and incorporates by

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 1

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

reference all arguments presented on these issues in his Amended Objections to the PSIR, ECF 493.

2.      Mr. Berry restates objection to PSIR paragraphs 52 and 109, which state, "The defendant has not clearly demonstrated acceptance of responsibility." ECF 494, pp. 12, 17. The Response to this objection is that "Despite the defendant's statement to this officer, he still does not meet the requirements for acceptance of responsibility as he took this matter to trial...." ECF 495, p. 10.

Mr. Berry initially denied committing his crimes, and for some time denied even to himself that his actions were wrong. But years before any potential for this resentencing emerged, he had fully admitted his culpability. His "Statements to [the interviewing] officer," *Id.,* clearly demonstrated acceptance of responsibility in the plain meaning of the words.

Mr. Berry suggests that this Court's order of a *de novo* resentencing "wipe the slate clean" of his sin of "putting the burden of proof on the government." *Id.* This Court has discretion to decide whether or not § 3E1.1 should be applied to Mr. Berry's current characteristics, rather than to the distant past.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 2

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

3.    Mr. Berry renews his objection to PSIR paragraphs 63, 71, 78 and 86. The response to this objection is that the Court now "has sufficient information to determine the defendant committed perjury at trial, considering his statements [accepting responsibility]" ECF 495, p. 10.

Mr. Berry notes that the § 3C1.1 increase was not applied in the 1997 PSI. He also notes the chill cast on the right of a defendant to testify at his trial by the working in tandem of the obstruction of justice increase, and the denial of acceptance of responsibility decrease. Together they create a circular trap. He does not ask for the benefit of both, he suggests the two should be a wash. If acceptance proves obstruction – he should get both: net zero. If acceptance is disallowed, it should not be allowed to prove obstruction; again: zero. That seems fair.

4.    Mr. Berry renews his objection to paragraph 99. The Response to this Objection is to pivot from predicating the application of §2K2.1(b)(5) on an "armed bank robbery," PSIR paragraph 99, ECF 494, p. 16, to "the attempted bank robbery of the U.S. Bank in Portland, Oregon, on October 8, 1996. ECF 495, p.10.

The Response "concluded [that the predicate felony of attempted bank robbery was committed] upon a preponderance of the evidence that a

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 3

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

bank robbery is going to occur..." *Id.* The "evidence" referred to is "the two past bank robberies and the acts taken on this date."

Even as stipulated facts "two past bank robberies and the acts taken on that date," *Id.* do not satisfy the elements of the crime of attempted bank robbery; which in fact has already been adjudicated by this Court. At Mr. Berry's November 4, 1997 sentencing hearing this Court stated:

> "...the words attempted robbery in reference to the October 8th incident should be deleted and that reference has been deleted and the final presentence report does not contain that reference."

Transcript, ECF 321, p. 4, ln. 6-9.

There was no attempted bank robbery, and "thinking about attempting" – or even "intending to attempt" – do not constitute felonies.

5.    Mr. Berry renews his objection to paragraph 131. The Response to this objection ignores the fact that federal sentencing is controlled by federal law, not by any various and sundry terminologies adopted by various states. The factoid cited in the Response, that "it is clear Idaho views commutation of a sentence and the suspension of a sentence as two separate and distinct options available to a sentencing court..." ECF 495, p. 12, is not disputed – it is merely irrelevant.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 4

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

Under federal law, any modification to a state sentence by a state *judicial* officer – such as a sentencing court – falls under the auspices of § 4A1.2(b)(2). Conversely, for the purpose of federal sentencing calculations, any modification to a state sentence by an *executive* agency – such as a board of parole, pardon, commutation, etc. – does not fall under the auspices of § 4A1.2(b)(2).

Whatever term the Canyon County, Idaho judge used when he sentenced Mr. Berry to an indeterminate 5 year sentence modified to 8.5 months, he was indisputably acting as a judicial officer. So, pursuant to § 4A1.2(b)(2), that sentence was for less than 13 months.

6.   Mr. Berry renews his objection to PSIR paragraph 134. The Response to this objection is that Mr. Berry has the burden of proving that his waiver of a jury trial "was done unknowingly..." or "that the Union County Court operated outside the law." ECF 495, p. 13.

Mr. Berry's position is that he does not bear the burden of proof to either one of those facts, particularly as Oregon statute requires, as the Response notes, that a waiver of jury trial be "in writing." *Id.*

7.   Mr. Berry renews his objection to PSIR paragraph 137. The Response to this objection is that Mr. Berry was convicted of two charges, "carrying a

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 5

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

concealed pistol," and "possession of marijuana;" that '[w]hile the weapons violation may be considered a part of the relevant conduct, the drug charge is not. Therefore, it is on the basis of the drug charge that the criminal history point is assessed." ECF 495, p. 13.

The weapons charge and the drug charge were consolidated for sentencing. It is not possible to disentangle them after the fact. The sentence amounted to 30 days; it may be that all 30 were attributed to the weapons charges – as the marijuana amounted to no more than 20 ounces each for the two defendants.

The idea that the Kelso charges are not relevant after all is a non-starter at this point – since this Court ruled several times over the course of two trials that it was. For instance: "The factors involving [the Kelso] incident were relevant based on the testimony that the Court heard at both trials so I would overrule that objection." Transcript of Sentencing Hearing, November 4, 1997, ECF 321, p. 4, ln. 3-5.

8.    Mr. Berry renews his objection to paragraph 173. The PSIR author's response to this objection indicates a misconception of the legal significance of "the charge as contained in the indictment..." ECF 495, p. 14. It is black letter law that a jury may not base its verdict on a charge as described in an

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 6

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

indictment. A verdict must be based on *evidence* proving the statutory *element* of the charged offense.

An Indictment is merely an allegation; it is neither evidence, nor an instruction upon elements to be proven. Only a court may instruct a jury as to the elements of a charge. And, as this court instructed the jury in this case:

> "The Indictment is not evidence and cannot be considered by the jury as an indication of guilt. [Not guilty] pleas put in issue each of the essential elements of the offenses charged in the indictment and which are more fully described in the instructions."

Jury Instruction No. 2, ECF No. 245, p. 6

Section § 924(c) provides for an increase in the penalty from 5 years to 30 years upon a finding that the firearm involved is a machine gun or destructive device (such as a bomb). This special "firearm type" is an element of the crime. *Callisto v. United States*, 530 U.S. 120 (2000), which – in a trial by jury – must be found by the jury.

Mr. Berry's jury was not instructed that in order to find him guilty of count S-5, the government must prove that he robbed the bank with any particular firearm type. When this Court described the elements the

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 7

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA 99201
Ph: (509) 701-0566

Government needed to prove in "counts 3, 5, 7, and 9," it listed only the

three elements of the standard § 924(c) offense, as follows:

> "First: the Defendant committed a crime of
> violence as alleged in a particular count;
> Second: The Defendant knowingly used or carried
> a firearm; and
> Third: The Defendant used or carried the firearm
> during and in relation to that crime."
> Jury instruction No. 13, ECF 245, p. 17.

Pursuant to these instructions, the jury needed only to find Mr. Berry

used "a firearm" – any firearm – to return a guilty verdict. The jury returned

only a general verdict as to count S-5, not a Special Verdict.[1]

Defendant, Robert Berry, through counsel, respectfully submits this

sentencing Memorandum and explains his position that, in light of current

law, and his own rehabilitation, a sentence at the low end of the Guidelines,

enhanced by two counts of § 924(c), is sufficient punishment to meet all

statutory goals.

## PART II

### A. SENTENCING LANDSCAPE

#### 1. *Statutory Sentencing Goals and Factors*

---

[1] Not only was there a lack of a special verdict, there was a lack of *proof* that the S-5 firearm was a bomb. The bomb was not used "in relation to" the *robbery* – it was not revealed until after the teller's left the counter area.  The bomb was used only to damage the bank, post-robbery.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 8

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

The U.S.S.C. Guidelines are structured to indicate a sentencing range that is sufficient, but not greater than necessary, to comply with the statutory goal that it:

> a.    Reflect the seriousness of the offense, promote respect for the law, and provide just punishment;
> b.    Afford adequate deterrence to criminal conduct;
> c.    Protect the public from further crimes of the defendant;
> d.    Provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court is to consider the following, case specific factors:
> a.    The nature and circumstances of the defendant;
> b.    The kinds of sentences available;
> c.    Avoidance of unwarranted sentence disparities between similar defendants;
> d.    The need to provide restitution to victims of the offense.

2.    *Sentencing Issues Affected by the 24 Year Interval*

a.    *Advisory v. Mandatory Guidelines*

Mr. Berry committed his offenses in 1996 and was sentenced in 1997, pursuant to the pre-*Booker* mandatory guidelines. The Guidelines in effect in 1997 were largely statutory maximum sentence limitations. *United States v. Booker*, 543 U.S. 220 (2005). Because sentencing purposes in the interim remained the same, Mr. Berry has no objection to the Court applying a post-*Booker*, advisory, sentence analysis, provided that the resulting sentence does not exceed the maximum allowed under the properly calculated current

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 9

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

Guideline range. As an above-range sentence would implicate ex-post-facto

concerns.

b.    *Changes in Sentencing Law*

Relevant aspects of sentencing law have changed dramatically since

1997. These changes effect "the kinds of sentences available" (Factor b, as

delineated above).

This Court previously noted – at Mr. Berry's 1997 sentencing hearing

that:

> "The law is quite clear [concerning
> mandatory consecutive § 924(c) sentence
> enhancement]…there is very little discretion
> left. [ ] The penalties are harsh and as
> everyone knows, they are harsh because
> Congress made them so and not this Court,
> but it is this Court's responsibility to carry
> them out."

Transcript of sentencing hearing, November 4, 1997, ECF 321, p. 29-30.

Twenty-two years later this Court, in light of Supreme Court

constitutional holdings in recent years, relieved Mr. Berry of two of those

harsh § 924(c) sentence enhancements.

Another recent change in § 924(c) sentencing law came directly from

Congress, which , because of decades of complaints that interpretation of §

924(c) allowing "stacking" of counts resulted in excessively harsh sentences

– "clarified" by amendment (15 U.S.C. § 403) that multiple § 924(c)

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 10

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

enhancements were not intended to be "stacked" as "second or subsequent" convictions.

Yet another relevant change in law derives from a line of Supreme Court constitutional decisions upholding the right to jury trial, including upon the elements of § 924(c) enhanced sentence penalties.

As this Court stated in 1997 when it imposed § 924(c) penalties upon Mr. Berry, "Congress made them harsh." But since then, Congress has relented somewhat (or been checked somewhat) by the Constitution. The change in law is not a "windfall," it is a correction of a mistake. Mr. Berry deserved a harsh sentence, but it was *excessively* harsh, according to the law. Now this Court can, and must, impose a sentence it deems appropriate based on the law as it stands today, and on Mr. Berry as he stands today, without regard for the old – illegal – sentence. A new sentence, based on an old illegal sentence is itself an illegal sentence.

c.    *Seriousness of the Crimes*

Neither the "nature" nor the "circumstances" of the offense have been affected by the interim of years. What happened in 1996 has not "un-happened" and the circumstances are still what they were (though may have become better understood).

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 11

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

d.    *Defendant has Changed*

As elaborated in Part III (below), both the "history" and the "characteristics of the defendant" have critically changed since 1997. As he stands today, Mr. Berry has rehabilitated and has learned his lesson.

Mr. Berry readily concedes that at the time he was arrested in 1996 – and continuing through and for some years beyond the time he was initially sentenced – he presented a danger to the public. In that era, the sentencing goal to "protect the public from further crimes of the defendant" could only have been achieved by his incarceration. Additionally, in those bygone days, Mr. Berry's characteristics included denying responsibility for his crimes, and rather than being remorseful for committing them, he convinced himself that his actions were justified.

However, during the course of incarceration, Mr. Berry has established a sustained "history" of commitment to his own rehabilitation, and of eschewing conflict and anti-social or violent conduct; his "characteristics" include full acceptance of responsibility for his crimes, sincere remorse for the harms he caused, and fervent hopes to make redemptive societal contributions.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 12

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:    (509) 701-0566

## B. NATURE AND CIRCUMSTANCES OF THE CRIMES

1. *The Seriousness of the Crimes is Captured by the Guidelines and Mandatory Enhancements*

In addition to the "history and characteristics of the defendant," which was addressed above, the Court must consider the "nature and circumstances of the offense" when fashioning a sentence that is "sufficient but not greater than necessary…"

The crimes committed by Mr. Berry were serious; they were violent and dangerous. They were not, however, outside the pale of the Guidelines. Even assuming the advisory Guidelines are applied, they are understood to capture the characteristics of even serious, violent and dangerous offenses, when properly calculated. This is the *point* of the Guidelines. As the Supreme Court has stated, [t]he Guidelines [are] the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007)

In regards to Mr. Berry's counts S-4 and S-8 (takeover bank robberies) the seriousness of the circumstances is doubly addressed; first the base level of each of these offense is substantially increased to "20" under § 2 B3.1, recognizing them as *armed* bank robberies, and then again by 10

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 13

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

total years of enhancement under § 924(c); which, together, adequately adjust for circumstances that created a high level of risk and fear, but no physical injury.

In regards to counts S-2 and S-6 (bombings) – which all can agree are dangerous crimes – the base levels are substantially increased to "24" under § 21.4(a)(c), recognizing that "the offense created a substantial risk of death or serious bodily harm;" which fully adjusts for devices that created a high level of risk and fear, but resulted in property damage only.

2. *Possible Aggravating Circumstances*

The PSIR (2nd Amended, ECF 493) identified § 5K2.6 a "potential grounds for departure." Under the advisory Guidelines, this provision can be applied "if a weapon or dangerous instrumentality was used in the commission of the offense." Applying § 5K1.4(a)(c) would amount to double counting.

As discussed above, the base level of the bombings already account for "a substantial risk of death or serious bodily harm" under§ 2J1.4(a)(c). By definition the use of a "dangerous instrumentality" introduces a "substantial risk of death or bodily harm." Additionally, if the reach of § 5K2.6 is

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA 99201
Ph: (509) 701-0566

deemed to extend beyond that of §2J1.4(a)(c), the difference is more than made up for by counter varying circumstances in mitigation.

3. *Possible Mitigating Circumstances*

The bombings were carried out in a manner intended to mitigate the substantial risks to others inherently involved. These bombs were not tossed into inhabited areas or placed in intended ambush.

In the first bombing at the *Spokesman Review*, the facts already adduced at trial are that the device was placed in an exterior basement stairwell adjacent to a sparsely used parking lot. The defendants waited in their truck in the parking lot until the bomb detonated. Mr. Berry claims this was instrumental; the below ground level placement, and then the monitoring of the exterior approach, was intended to mitigate the likelihood of personal injury. This claim is supported by a fair common-sense interpretation. To be clear, Mr. Berry does not expect a pat on the back, or leniency for his thoughtfulness. But he does resist an aggravated interpretation of the bombing that turns an admittedly malicious, grossly ill-considered act into a depraved one.

So too, for the second bombing at the bank on April 1st. The known facts are that everyone in the building was moved to the area of the exit; then

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 15

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA 99201
Ph:  (509) 701-0566

evacuated. Mr. Berry claims that the fact that the building was uninhabited when the bomb went off was not a matter or serendipity. He knows that while discharging a bomb in an empty building was inherently dangerous, it has less magnitude than discharging a bomb in a crowded one.

The known facts of the third bombing at Planned Parenthood, are that the building was empty and locked, it was of cinderblock construction, the single entrance faced an alley; across the alley was the windowless brick back wall of a building; the bomb was wrapped in the #4 buckshot. A verifiable fact is #4 buckshot is intended and marketed as a "home defense load" due to its low penetration (it's unlikely to penetrate the wall in an ordinary house) and yet does significant damage at very close range. Mr. Berry claims that the site was chosen because it met three criteria: injury was unlikely (due to the building's construction and orientation); a valid target and distance from the bank. The bomb was constructed with the intent to maximize property damage, but without increasing the likelihood of injury. To ensure that no one passed through the alley or approached the entrance, Mr. Berry stayed about 10 feet from the building until after the bomb detonated.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 16

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

The known facts of the fourth, intended bombing (at a bank on July 12) are that a much larger bomb was carried into the same bank, which was again evacuated; the bomb was carried back out rather than being detonated. Mr. Berry claims that he carried the bomb out of the bank rather than arming it as intended, because he observed people near the entrance, possibly approaching to enter, but in any case, who were possibly within the danger zone of the bomb. The notion that the bombers would realize their imperfect control of the target site and abort the bombing is not far-fetched, unless the starting assumption is that they were deranged madmen – which doesn't square with any of the known facts in this series of bombing.

Mr. Berry is fully cognizant of his debt to the grace of god and to luck. He is profoundly grateful for it. His point in mitigation is merely that it is easier for luck to fall on a bomber who places his bomb in an empty area, instead of an occupied one.

4. *The Kinds of Sentences*

(Factor b) Under the advisory Guidelines, the Court may depart from the Guidelines to impose a sentence that is "reasonable" in light of the sentencing goals enumerated by Congress. Under the mandatory Guidelines, the sentence is constrained by the Guidelines. The sentence enhancement

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 17

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

for the S-5 § 924(c) count is fixed at 5 years consecutive to all other counts. The same applies in count S-9.

(Factor c) Avoiding unwarranted sentence disparities is the central point of using Guidelines. Disparities in the sentence of, for instance a co-defendant, may be warranted if there are different individual factors such as rehabilitation, age, health, etc.

5.    *Restitution*

(Factor c) The balance due upon restitution previously ordered is $214,240.83. Mr. Berry agrees that he has a legitimate obligation, moral as well as legal, to make restitution for the property damage he caused. However, Mr. Berry's prison pay for the last several years had been $5.25 per month, which totals $15.75 per quarter; $9.25 less than the $25.00 minimum under the BOP FRP program.

If he were released, Mr. Berry's repayment prospects would be dramatically improved. He has highly marketable skills; expects to obtain good paying employment; and is entirely willing to meet restitution payments as set by a supervised release officer.

6.    *Health*

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 18

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA 99201
Ph: (509) 701-0566

Mr. Berry is 66 years old. He was diagnosed in 2013 as suffering from acute aggressive prostrate disease, for which he takes medicine. This disease results in frequent urination; it is also causing irreversible kidney damage.

## C. SENTENCE REQUESTED

### 1. *Sufficient But Not More Than Necessary*

Pursuant to the sentencing policy implemented by Congress, "[t]he over-arching statutory charge for a district court is to 'impose a sentence sufficient, but not more than necessary' to comply with 18 U. S. C. § 3553(a)'s sentencing factors…." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) *(en banc)*. The §3553(a) "factors are to be applied parsimoniously – the sentence must be 'sufficient but not more than necessary to comply with the purposes' of punishment." *United States v. Barsumyan*, 517 F.3d 1154, 1157-58 (9th Cir. 2008).

### 2. *Adjustment for Rehabilitation*

The Guideline calculations have no provision for adjustment for post-incarceration rehabilitation. However, the Supreme Court calls it "highly relevant." *Pepper v. United States*, 562 U.S. 476, 491 (2001). As the Ninth Circuit explains, "post sentence rehabilitation provided the most up-to-date

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

picture of [a defendant's] 'history and characteristics.'" *United States v. Dibe*, 776 F.3d 665, 670 (9th Cir. 2015), *quoting Pepper* at 492.  In light of which Mr. Berry requests this Court adjust the Guideline range by considering his now 35 year old criminal history as too stale to signify – and discount it by way of downward departure.

3.    *Low End of Guideline Range*

The Ninth Circuit holds that "a district court should consider how the passage of time, including the defendant's maturation and personal development in the interim affect such sentencing factors as likelihood of rehabilitation and recidivism. *Id.* Mr. Berry believes that a sentence in the lower Guideline range would prove sufficient, but not more than necessary. In considering this, he asks the Court to be mindful of his sincere remorse, his age, his health, his family's support and his goal of redemptive social contributions.

4.    *Supervised Release*

Mr. Berry is ideally suited to successfully complete a term of supervised release. His is reconciled with, and has secured a home with his ex-wife, the mother of his children. He has highly marketable skills and knowledge and has secured gainful employment doing work he would

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 20

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

enjoy. He is an honorably discharged Vietnam era veteran, eligible for VA health care; he is 66 years old and is Medicare eligible.

Mr. Berry has a large and devoted family support system. He neither has, nor ever had, any alcohol or drug abuse issues. Additionally, he has a track record for successfully completing supervised release from state cases over four decades ago. He would fully and cheerfully comply with all terms and conditions of supervised release.

## PART III

### A.    MR. BERRY'S POST-INCARCERATION REHABILITATION

1.    *Post-Incarceration Rehabilitation is a Critical Factor*

Mr. Berry respectfully asks this Court to consider his two-decade "history" of post-incarceration conduct as especially relevant to determining an appropriate sentence.

The Supreme Court has several times emphasized that post-offense conduct is a critical factor that district courts should consider when determining an appropriate sentence under §3553(a).

In *Pepper,* for instance, it stated that rehabilitation is "highly relevant to several '§3553(a) factors, including the history and characteristics of the defendant' under § 3553(a)(1), and § 3553(a)(2)'s rehabilitative goals, and

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

that post-incarceration conduct will often 'critically inform a sentencing judge's over-arching duty' to impose a sentence sufficient but not greater than necessary to further § 3553(a)'s purposes. *Id.* at 491.

Thus, *Pepper* instructed district courts to use "the fullest information possible concerning the defendant's life characteristics" when determining an appropriate punishment to "fit the offender and not merely the crime." *Id.* at 487-88, *(quoting, Williams v. New York*, 337 U.S. 241, 246-47 (1949).

2.    *Post-Incarceration Obstacles to Rehabilitation*

Mr. Berry has spent his time in prison on a journey of self-betterment. He has persisted despite considerable obstacles to self-improvement. As Mr. Berry explains, the mire of the prison environment itself is a challenge to rise above. He spent two decades – from 1997 to 2017- in maximum security penitentiaries. Within the universally harsh and violent United States Penitentiary (USP) system, the three USP's where Mr. Berry served his time are considered to be among the worst of the worst.

As Mr. Berry explains it, the societal structure in those places revolves around racist and gang affiliations. It is dominated by animosities – and often open warfare. Additional unremitting violence derives from "good" ('solid', 'down') convicts keeping the yard "clean" of undesirable

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 22

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

inmates: snitches, rats, ex-cops, gang dropouts, sex offenders, debt-duckers, check-ins, etc.

Yet another source of constant violence derives from the prison administration policy to prevent any sort of prisoner unity by exploiting any potential form of division between prisoners. This tool of control takes two basic forms. The most potent of which is encouragement, and even fomentation of, rival divides; this tactic contributes to violence on a larger scale – riots. The other tactic – more constant and unrelenting – is their enjoyment of mass punishment. The resulting prisoner on prisoner violence is on a smaller scale, but in total it kills more people as prisoners are expected to "discipline" other prisoners for causing everyone to be punished.

Obviously, a USP does not provide the sort of edifying and uplifting environment that tends to engender a contemplative spirit. The direction of least resistance is directly away from the concept of personal character growth. The flow is to devolution, not evolution.

Mr. Berry believes that to rise above the USP environment, a person must be disposed to carry his own with him; it must be contrary to his nature to let himself be defined by a *place*. Even be it hell.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 23

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

Mr. Berry is living testament that a person who is self-motived can, in *any* environment, find space and time to look inside himself and consider whether he had gone astray – and if so, how, and consider how to fix it.

He reports that as a person trying to retain – or regain - a better version of his character, he was gratified to find he wasn't totally alone. He always knew a handful of people who "didn't belong there." They were usually people who were going to get out at some point, and wanted a very different life when they did. They wanted to be a part of – and earn the respect of – their community. Above all, they wanted their children to be proud of them. People with such motivation can't be held back by a mere "environment."

Another obstacle to personal advancement – an often decisive one – is the hopelessness that a life sentence tends to engender, particularly a life without parole (LWOP) sentence. Mr. Berry met several people with LWOP sentences, and many more with simple life sentences, and he found that many, though certainly not all, of them were defeated by it. Mr. Berry explains that he found such a person tended to feel his life had no value – that he was irredeemable – that he had in fact already been pronounced dead; and what's more, concepts such as "values" and "morals" – as well as

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 24

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA 99201
Ph: (509) 701-0566

fear of punishment for additional crimes – have no relevance for the dead. They call themselves "Lifers", though a more accurate term is coming into vogue: "the walking dead."

Mr. Berry, fortunately, could reject this viewpoint out of hand; for several reasons. First, he never doubted that his life still had value; for one thing, he has a large family of whose love he was never in doubt; for another thing he knew himself well enough to know he was blessed with skills and intelligence that could still be put to good use – he knew he could have positive influence on other prisoners – he knew he had things he could teach, and things he could learn.

Secondly, Mr. Berry did not let the pronouncement of a sentence of punishment define him as a man. He refused to self-identify as a "lifer." When other prisoners would ask him how he continued to carry himself as he did, while serving an LWOP, Mr. Berry would always reply: "I'm not doing 'life', I'm doing today. And since my goals for today are more than I can get done, I always look forward to tomorrow."

One more matter worth mentioning briefly on the subject of hindrances to self-improvement concerns, the BOP "Bureau Culture." Many administrators and staff are of the old- school view that a con is in

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 25

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

prison to do time – not learn stuff. Over the decades, BOP has a least increased its lip service to "rehabilitation programs," and generates some bureaucratic paperwork with regard to those words, but there are still more disincentives that incentives to participate in the sparse offerings. Hopefully the First Step Act of 2018 will begin to make headway against "Bureau Culture" resistance to its implementation.

3.    *Post Incarceration Achievements*

a.    *Education*: Mr. Berry – who went to prison with about six years of higher education and was a certified master mechanic – spent much of his time in prison in various educational pursuits. He completed over 900 credit hours of BOP certificated classes. And at least that many additional non-certification (prison produced) classes. He also independently studied textbooks on many subjects, read a few hundred academic books and more than one thousand scientific and academic treatises and papers on dozens of different topics – taking thousands of pages of notes. He taught himself to conduct legal research and he read hundreds of cases in criminal, business and patent law. He gained what he terms "rudimentary skills" in piano and guitar.

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

b.    *Teaching*: Mr. Berry also spent a good deal of his time in prison teaching and mentoring other prisoners.  He taught BOP certificated class in and many un-certificated classes. He helped many people with their legal work. He was also a trusted and respected source of advice on many various subjects.

c.    *Writing*: Mr. Berry spent much of his time in prison writing. Prior to 1997, he had taken classes in creative writing, and studied technical writing as a significant part of his mechanical engineering coursework; and he had done some professional technical writing – contributing to the production of some auto repair manuals. Post-incarceration, he has worked on writing four books, most in the manuscript phase.

d.    *Inventing*: Mr. Berry put his gift of mechanical genius to work on inventions that would be beneficial to society. He reports that the inventions are sufficiently developed to patent and produce; and further that he would continue to work toward seeing it produced even if he remained in prison – that he feels he owes it to his family and to society – but that, of course, it would be a much longer process if he could not personally work to implement its production.

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 27

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

e.    *Corroboration of Post-Offense Rehabilitation:* It is not necessary to take Mr. Berry's word for it that he is a changed man.  In the decades since 1997 he has been under close observation by the government itself.  The BOP has a real interest in and vast experience in judging the dangerousness of the prisoners they literally rub elbows with 24/7.

Mr. Berry's prison record provides ample credible evidence that: (a) he has eschewed engaging in any form of violence; threats or coercive behavior; (b) he has a low likelihood of recidivism; and (c) the state of his mind set has progressed as necessary to be a productive member of society.

1.    *Free of Violence*: Mr. Berry's disciplinary record, which spans nearly two and a half decades, is totally free of any conduct that involves any form of violence. Particularly in the context of the unremittingly violent atmosphere of USP's, this is no minor accomplishment. This kind of record takes commitment to achieve; it doesn't happen by luck or by any means of skill in escaping detection. Such would be impossible of this sustained period.

2.    *Rated "Low" Risk:* In late 2019 the BOP, at the direction of Congress, performed an "evidence based" assessment of the sustainability of each prisoner in its custody to participate in programs leading to a

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 28

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

reduced sentence. As part of that assessment, the BOP rated Mr. Berry's "likelihood of recidivism" as "low."

3.    *Positive progression:* Mr. Berry's BOP disciplinary record also shows – in addition to a commitment to non-violence – a positive progression in his attitude as he began his journey of self-examination and rehabilitation.   Between November 1997 and March 1998, he received 8 incident reports for low level infractions concerning refusals to obey various orders. These were based on beliefs he held at the time that his incarceration was illegitimate.  The fact that beyond this initial stage, there is never again a report of conduct of this kind strongly supports Mr. Berry's claim that his beliefs – beliefs that were crucial to justifying his crimes – began to change upon self-examination.

Other forms of BOP records also support Mr. Berry's claims of self-rehabilitation. The BOP periodically reduced his custody level rating – despite his pair of LWOP sentences. His custody rating, which began in 1997 at "Max-In" was in December 2001 reduced to "Max," and then in 2013 to "Medium" – at which time he also received recognition as a "model prisoner."  He transferred from a USP (Max) to an FCI (Medium) in 2017.

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

4.    *Corroboration of Motive for Rehabilitation:* The fact that Mr. Berry's demonstrable rehabilitation efforts are not a façade, but could only be motivated by a genuine personal growth in the way he viewed the world, is strongly supported by the fact they were carried out while he served an LWOP sentence.    The Ninth Circuit ruled in the *Briones* opinion on the significance of self-rehabilitation under an LWOP sentence:

> "The eighteen years that passed between the original sentencing hearing and the resentencing hearing provide a compelling reason to credit the sincerity of Briones' efforts to rehabilitate himself...For the first fifteen years of Briones' incarceration his LWOP sentence left no hope that he would ever be released, so the only plausible motivation for his spotless prison record was improvement for improvement sake.":

*United States v. Briones*, 929 F.3d 1057 (9th Cir. 2019).

For eighteen years – from 1997 until the *Johnson* decision came out in 2015 – Mr. Berry, like Mr. Briones, had no realistic hope of release.  He wanted to be a better man merely because he realized he could be – irregardless of his place of dwelling. But most of all he wanted to be a better man because down in his secret heart he always knew that his own innate nature – his true self – was "a better man that that."

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 30

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

## B. THE REHABILITATION NOW ACHIEVED WILL NOT LATER COME UNDONE

1. *Mr. Berry is Personally Responsible for His Crimes*

Mr. Berry takes full responsibility for his own actions, committing bombings and robberies in the mid-1990's. He did it of his own free will. Nobody forced him, nobody tricked him. The government didn't make him do those crimes; it was a product of his own erroneous thinking.

Mr. Berry knew at the time that his actions construed crimes, and moreover, he had a reasonable comprehension of the risks he was subjecting other people to.  He now unequivocally agrees that his actions were not only criminal, they were morally wrong – more than wrong – they were evil.  He carries an abject sorrow for having egregiously harmed innocent people. "It has all left an indelible stain on [his] soul."

He deserved to go to prison. He is now appreciative, rather than bitter, that he was convicted and removed from society before causing the kind of harm for which no redemption is possible.

2. *Mr. Berry's Rehabilitation is Genuine*

As he stands before the Court today, Mr. Berry is truly an ex-criminal. He is fully ready to reintegrate into society. His worldview-character-is now conducive to being a productive member of his family, his

DEFENDANT ROBERT BERRY'S SENTENCING MEMORANDUM- 31

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

community and his country.  Certainly, he makes no claim to be perfect – he will be a work in progress until the day he dies. Like everyone, he will make mistakes – but these will be *mistakes*, not crimes. He will not "relapse."

3. *Mr. Berry's Violent Mindset Was an Anomaly in His Life*

Mr. Berry was never a bank robber or bomber by occupation or inclination. He committed those crimes, but it was certainly not the "work of his heart." The mindset he adopted in the mid 1990's when he committed violent, dangerous crimes will prove to be an anomaly in the context of his whole story.

In his "prior life" – before he arrived at the stage in life where he thought of his government as the enemy – Mr. Berry could not have imagined himself as ever committing a violent crime. Such a thought was foreign to his character. He describes what he terms a "banishment" of his "pre-Ruby Ridge and Waco worldview," as a "sudden and catastrophic paradigm shift" in his mindset.  This occurred in the early 1990's.

At first this trauma created in him a mindset justifying only armed *defense* preparations. He joined the then burgeoning "militia movement." He forfeited his courage and anesthetized his innate tendency to self-

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

introspection by adopting an extremist Biblically based religion (which he has since un-adopted).

It wasn't until the aftermath of the "Kelso incident" in 1995 that his essentially defensive outlook evolved into a view of the world – more particularly a view of the government – that also justified *offensive* actions (read: committing violent crimes) in a war with the government.

Mr. Berry's claim that his "criminal mindset" of the mid-1990's was an anomaly – that it was not a pre-existing defect in his character – is supported by the lack of violence in his criminal history. It has also been attested to by those who know him best – members of his immediate family. It is further borne out by the fact he was able to return – rehabilitate – to his old self, despite all obstacles.

4. *Lessons Learned*

When asked why it should now be believed that he would not, once again resort to taking the law into his own hands were the government to, say for instance, once again engage in acts viewed as unconstrained atrocities, Mr. Berry gives a two part reply: (a) the confluence of circumstance necessary for "critical mass" – the very particular milieu of the era, the local culture, the echo chamber amplifying paranoia and bad

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 33

JOHN P. NOLLETTE
Attorney at Law
1408 W. Broadway Ave.
Spokane, WA  99201
Ph:  (509) 701-0566

ideas, and crucially, the unlikely combination of personalities – could never
in a million years be duplicated; and, (b) more importantly – he has learned
his lesson. He is an older, wiser, and more patient man; he now recognizes
and understands his moral error: no good, only heartache and tragedy, can
ever come from returning evil for evil.

Respectfully submitted this *11* day of June, 2020.

/s/John P. Nollette
John P. Nollette
Attorney for Robert Berry

<u>CERTIFICATION</u>

I hereby certify that on the *11* day of June, 2020, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF System which will send
notification of such filing to the following.

Joseph Harrington
Assistant U.S. Attorney
920 W. Riverside, Room 300
Spokane, WA  99201

/s/John P. Nollette
Attorney for Robert Berry

DEFENDANT ROBERT BERRY'S SENTENCING
MEMORANDUM- 34